THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IRMA PERDOMO,

        **Plaintiff,**

**vs.**                             **Case No.  8:21-cv-01174-VMC-CPT**

**TK ELEVATOR CORPORATION
/aka/ THYSSEN ELEVATOR
COMPANY /aka/ THYSSENKRUPP
ELEVATOR CORPORATION,**

        **Defendant.**

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, IRMA PERDOMO ("Perdomo" or "Plaintiff"), by and through her undersigned attorneys, states as follows in her Amended Complaint against TK ELEVATOR CORPORATION /aka/ THYSSEN ELEVATOR COMPANY /aka/ THYSSENKRUPP ELEVATOR CORPORATION, ("TKE" or "Defendant"), and in support thereof states as follows:

## INTRODUCTION

1.     This is an action to secure relief, legal, equitable, injunctive, and punitive, based upon TKE's discriminatory employment practices with respect to compensation of its female manager, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA").

2.     In violation of Title VII and the EPA, TKE discriminated against Perdomo during her employment with TKE because of Perdomo's gender.  Along with being disparately underpaid

and shut out of company leadership, Perdomo was retaliated against and terminated for complaining about gender inequities at TKE.

3.       Perdomo was paid less than both her predecessor and similarly-situated male managers.  This pay disparity is the direct result of TKE's male-dominated leadership.  A male-dominated organizational structure allowed upper management to disfavor Perdomo because she was a female manager.

4.       TKE engaged in a pattern and practice of discrimination against Perdomo, a female manager, under both a disparate treatment and disparate impact theory of liability which affected Perdomo's compensation and other terms/and or conditions of employment.

5.       Perdomo requests declaratory and injunctive relief to redress TKE's discriminatory employment policies, practices, and procedures. Perdomo further seeks back pay; front pay; compensatory damages; nominal, liquidated and punitive damages; and attorneys' fees and costs.

## **PARTIES**

6.       Perdomo is an individual over eighteen years of age, residing and domiciled in Pasco County, Florida and is otherwise sui juris.  During all relevant times, Perdomo was a female "employee" as defined by Title VII and the EPA.

7.       Defendant is a global corporation, providing elevator sales and services, with its American headquarters registered in Georgia, USA.  Defendant has an office located in Tampa, Florida at 400 North Tampa Street, Suite 1700.  Defendant is a foreign corporation authorized to conduct business and is conducting business in the State of Florida.  At all times material hereto, TKE has been an "employer" as defined by Title VII and the EPA.

**JURISDICTION AND VENUE**

8.      Venue is proper in this Judicial Circuit as all the events arising out of this cause arose in this Judicial District.  Venue of this action is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

9.      Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §1331, 42 U.S.C. § U.S.C. § 2000e-5(f)(3).  This Court may exercise supplemental jurisdiction over Perdomo's FCRA claims pursuant to 28 U.S.C. §1367(a), as the Plaintiff's state and federal claims arise out of a common nucleus of operative fact, as more fully set forth below.

**ADMINISTRATIVE PROCEEDINGS**

10.      On June 7, 2019, Perdomo filed a Dual Charge of Discrimination against TKE with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), charging TKE with discrimination based on gender, a true and accurate copy of which is attached hereto as **Exhibit A** ("Charge") and incorporated herein.  (EEOC Charge No. 511-2019-01879).

11.      TKE's position statement, dated August 16, 2019, defends Perdomo's discrimination charges, in part, by attributing gender-based compensation disparities "based upon a combination of factors, including, education, experience, performance, geographical location, and other gender-neutral factors".  A true and accurate copy of the body of the TKE's position statement is attached hereto as **Exhibit B**.

12.   TKE's position statement also emphasizes adherence to corporate discrimination policies and avenues for employees to redress their grievances with management.

13.      TKE's position statement identifies senior managers Terry Story and Gary Losey that made compensation decisions regarding Perdomo.

14.     Perdomo submitted additional correspondence, dated September 29, 2019, to the EEOC to aid in its investigation, which addresses TKE's gender-based compensation disparities based upon facially neutral factors, such as experience, education, and performance ratings. A true and accurate copy of the body of which is attached hereto and incorporated herein as **Exhibit C**.

15.     TKE's counsel and Perdomo routinely communicated with Inspector Raymond Nieves of the EEOC during the nearly two (2) year time span in which the EEOC investigated discriminatory gender-based compensation disparities at TKE because of TKE's compensation policies and practices. In part, an e-mail chain, dated January 25, 2021, reflects confirmation of communication among the parties and Inspector Raymond Nieves. *See* **Exhibit D**.

16.     The EEOC investigated Perdomo's Charge with sufficient information from both parties to investigate the disparate impact of TKE's compensation policies and practices on female managers and Perdomo at TKE, and also the disparate treatment of Perdomo.

17.     With respect to Perdomo's Charge, after an investigation lasting nearly two (2) years, and being unable to resolve the dispute between Perdomo and TKE, the EEOC issued a Notice of Right to Sue dated March 1, 2021, based on Perdomo's allegations, a true and accurate copy of which is attached hereto as **Exhibit E**,

18.     Perdomo filed this lawsuit on May 13, 2021, within 90 days of the date the Notice of Rights was received by Perdomo.

19.     Perdomo timely filed her Charge of discrimination with the EEOC and has met all administrative prerequisites for the bringing of this action.

## FACTUAL ALLEGATIONS

20.     TKE is truly a global corporation with a prominent presence in practically every country in the world, where it provides many products and services.

21.     TKE exalts its successes by emphasizing its global presences in hundreds of countries; employees in excess of fifty-thousand; thousands of sales and service locations; and billion-dollar sales figures.

22.     Along with having its USA corporate headquarters based in Alpharetta, Georgia, TKE also has over one hundred additional office locations across the USA.

23.     Prior to moving its corporate headquarters to Georgia, TKE's corporate headquarters were based in Tampa, Florida, where Perdomo was employed.

24.     TKE tolerated and cultivated a work environment that discriminated against female managers.  TKE business operations are led by a male-dominated organizational structure at all levels of the company.

25.     TKE's discriminatory policies, practices, and procedures included implementation of pay compensation systems and rates that resulted in systematic gender-based disparities in base pay, merit bonuses, and other forms of compensation. Consequently, female managers, such as Perdomo, routinely made less than their male colleagues. Further, TKE ignored, disregarded, minimized, covered up, mishandled, or otherwise failed to respond properly to evidence of gender discrimination in the workplace.

26.     In general, the policies, practices, and procedures that governed the management of the organization lacked the sufficient standards, quality controls, implementation metrics, transparency, and oversight to ensure equal opportunity at TKE.

27.     TKE's uniform nationwide policies, practices, and procedures resulted in lower compensation for Perdomo than similarly situated male managers.

28.     TKE's pay compensation system and rates, based upon a combination of factors, including, education, experience, performance, geographical location, and other gender-neutral factors, produced gender-based compensation disparities for Perdomo, and other female managers.

29.     While TKE's pay compensation systems and rates might call for payment to all managers in a facially neutral manner, the actual wages paid to Perdomo, and other female managers, did not reflect the true relative worth of jobs as viewed by the TKE.  Perdomo was being compensated disparately despite performing the same job of comparable worth, under the same system.

30.     Perdomo were subjected to continuing unlawful disparate treatment. Moreover, TKE's policies and procedures, including its pay compensation system, while facially neutral, also had an ongoing disparate impact on Perdomo, and other female managers.  TKE's fostering of a male dominated leadership structure further resulted in discriminatory application of TKE's pay compensation system.

31.     A male-dominated hierarchical organizational structure, including Perdomo's male superiors, utilized TKE's pay compensation system in a subjective manner to pay Perdomo, and other female manager less than similarly situated male managers.  The result was that a female manager, such as Perdomo, would not receive the intended compensation rates under TKE's payments system for providing the same job value as a male counterpart.

32.     Because TKE's management did not provide sufficient oversight or safety measures to protect against intentional and overt discrimination or the disparate impact of facially neutral policies and procedures, Perdomo suffered from discrimination without recourse.  Where

complaint and compliance policies existed, they lacked meaningful controls, standards, implementation metrics, and means of redress such that male upper management could ignore, disregard, minimize, cover up, mishandle, or otherwise fail to respond properly to evidence of discrimination in the workplace.

33.     There was no meaningful separation between complaint reporting channels and TKE management responsible for creating discriminatory conditions for women. This meant that Perdomo's faced retaliation or was dissuaded from raising concerns altogether. TKE's failure to address retaliation against Perdomo left her further vulnerable as a target for discrimination.

34.     TKE thus condoned, fostered, and encouraged discrimination. Within this environment, when Perdomo questioned the company's pay policies and practices, she was terminated.

35.     TKE demonstrated a reckless disregard—a deliberate indifference—to Perdomo, a female manager, by overlooking or otherwise dismissing even blatant evidence of gender discrimination.

36.     TKE's policies, practices, and procedures were not valid, job-related, or justified by business necessity. Alternative, objective, and more valid procedures were available to TKE that would avoid such a disparate impact on Perdomo.  TKE failed or refused to use such alternative procedures.

37.     Male leadership, including male upper-management, made final compensation decisions, including base pay and merit bonus determinations, for Perdomo.

38.     TKE failed to enact policies to ensure that TKE's male leadership did not violate the company's fair employment policies and equal opportunity laws, and failed to create adequate incentives for leadership to comply with such policies and laws.

39.     After Perdomo began working for TKE in January 2014 as a Payroll Specialist, she was immediately recognized as an exceptional employee and was rapidly promoted within the company.

40.     At first, Perdomo was then promoted to Regional Project Manager – Max, in July 2016 to oversee forty corporate branches.

41.     Subsequently, in September 2017, Perdomo accepted a promotion as Lead Project Manager – MAX ("Lead Manager"), a salaried position, in part to manage an additional eighty corporate branches.

42.     Immediately Perdomo's duties tripled.  The management of one-hundred and twenty total branches entailed a substantial increase in the preparation and participation of status meetings.  Perdomo's became responsible for overseeing the performance and installation efforts of additional employees, and monitored their attendance at meetings.  Perdomo also coordinated the ordering of parts and installation efforts nationwide.

43.     While Perdomo's male predecessor had been paid a higher rate under TKE's pay compensation system, Perdomo was being compensated disparately despite performing the same job of comparable worth, under the same system that utilized compensable factors such as skill, effort, responsibility, and working conditions.

44.     TKE's standard procedure was to post open job positions, along with the salary range for the open positions.  Internal postings reflected a large pay disparity between Perdomo's compensation and listed salaries for managerial positions.

45.     Job postings on internet websites, such as "indeed.com" and "glassdoor.com" reflected much higher salaries then Perdomo received as Lead Manager.

46.     TKE did not post the Lead Manager position to allow interested candidates to apply.

47.     Instead, Perdomo was given the Lead Manager position with the promise of a corresponding increase in salary.

48.     While Perdomo continued to perform her new duties as Lead Manager, her pay increase never materialized.

49.     At all relevant times, Perdomo's immediate predecessor, Richard Gibson, a male manager, received significantly more compensation.

50.     Perdomo was also paid less than similarly-situated male managers.

51.     The nationwide gender-based pay disparities at TKE reflect a broad pattern of intentional discrimination that resulted in lower compensation for Perdomo than her predecessor and also similarly situated male managers.

52.     Perdomo's gender-based pay disparity was due to male superiors who paid her less than her predecessor and similarly-situated male managers.  In particular, Perdomo's immediate supervisor, Gary Losey ("Losey") and Losey's supervisor, Service Vice President Greg Bottoms ("Bottoms"), decided to pay Perdomo less because of her gender.

53.     Salaries of Perdomo's male, managerial colleagues were higher than her salary. Although Perdomo's male counterparts performed similar tasks, requiring similar, skill, effort, and responsibility, and under similar working conditions.

54.     A female "Office Manager" for TKE, Maritz Torres, based in Miami, informed Perdomo that Torres' compensation was lower than male counterparts.

55.     Another female "Service Repair Manager", Courtney Hilery, based in Tampa, also informed Perdomo that Hilery's compensation was lower than male counterparts.  On multiple occasions Ramon Rivera, Hilery's successor confirmed that his salary was higher than Hilery's salary.

56.     Perdomo repeatedly inquired about and opposed her gender-based pay inequities at TKE and asked her male superiors, and also human resources to address and rectify these issues.

57.     Soon after her promotion, Perdomo first approached her immediate superior in August 2017, Losey to give her the salary increase.

58.     Perdomo repeatedly questioned Losey about her the pay disparity between her and male predecessor, Richard Gibson.

59.     Perdomo also expressed the same concerns about her the pay disparity between her and male predecessor, Richard Gibson, to Human Resources Manager Sandy Crossley ("Crossley") after speaking with Losey.

60.     Perdomo repeatedly complained about the pay disparity to Losey for performing the same duties and responsibilities as performed by her male predecessor as Lead Manager.

61.     Perdomo performed similar tasks, as her predecessor, Gibson.  These tasks required similar, skill, effort, and responsibility, and under similar working conditions and were specifically listed on the job Description for the Lead Manager.  (See **Exhibit F**).

62.     In particular, Perdomo complained to Losey about her compensation in December 2018, and then again in March 2018.

63.     In April 2018, Losey updated Perdomo's job title to reflect her job duties, but her compensation did not increase.

64.     Subsequently, in August 2018 Losey formally wrote-up Perdomo for a work performance issue in retaliation when Perdomo again complained to Losey about her pay disparity.

65.     After disputing the write-up with human resources, Perdomo successfully had the write-up rescinded (and was subsequently awarded her annual merit increase).   However, Perdomo's disparity in pay remained unaddressed.

66.     Perdomo continued to industriously and competently perform her duties and was reassured by Losey, in a signed letter executed by both individuals, that she would be part of the relocation to the new Georgia headquarters.  However, the letter was nothing more than a ruse to silence Perdomo's complaints.

## OTHER INCIDENTS OF RETALIATION AGAINST PERDOMO

67.     While Bottoms and Perdomo had their offices in close vicinity on the same floor, Bottoms would avoid interaction with Perdomo.  On a particular occasion, while walking out of a restroom, Bottoms noticed Perdomo, and turned and walked back into the restroom.

68.     Perdomo duties required collaboration with Bottoms but his hostility hindered Perdomo from completing her tasks effectively.

69.     Bottoms and Losey were both dismissive and condescending regarding Perdomo's inquiries about her continued role as lead manager with future TKE projects.

70.     Bottoms and Losey then excluded Perdomo from a Max presentation meeting attended by other staff members.

71.     In December 2018 Perdomo was initially excluded from traveling to Atlanta for a meeting for all project managers.  Only after Perdomo inadvertently became aware of the meeting from another attendee, did Bottoms and Losey allow Perdomo to attend the Atlanta meeting.

72.     Nevertheless, Perdomo remained persistent about articulating her complaints regarding the gender-based pay disparity to male management to no avail, and also to TKE's human resources representatives.

73.     Under the direction of TKE male leadership, Isaac Pena, a branch manager in Tampa, Florida, approached Perdomo to quit her managerial position and become an administrator in an attempt to remove her from her current position.

74.     While Perdomo's never received a salary increase, she was instead terminated on January 23, 2019.

75.     On January 23, 2019, Perdomo participated in a telephone conference with Vice President of Services, Terry Story ("Story"), along with a human resource representative, where she was informed of her termination.

76.     TKE's advanced a pretextual reason to Perdomo's termination in that Perdomo's position was eliminated but the project remained incomplete.  Over one-third of the project tasks and duties that were assigned to Perdomo to oversee were yet to be completed.

## COUNT I

### PAY DISCRIMINATION – DISPARATE TREATMENT
### VIOLATION OF TITLE VII
### 42 U.S.C. §§ 2000e, *et seq.*

77.     Perdomo re-alleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

78.     Defendant TKE, an employer of Perdomo within the meaning of Title VII, has discriminated against Perdomo by treating her differently from, and less preferably than, similarly situated males, including her male predecessor, by subjecting her to discriminatory pay in violation of Title VII.

79.     Defendant's policies, practices, and procedures resulted in continuing unlawful disparate treatment of Perdomo with respect to her terms and conditions of employment.

80.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Perdomo, entitling Perdomo to punitive damages.

81.     By reason of the continuous nature of Defendant's discriminatory conduct regarding compensation, which persisted throughout Perdomo's employment, Perdomo is entitled to the application of the continuing violations doctrine to all violations alleged herein.

**WHEREFORE**, Perdomo respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.     An Order declaring that TKE violated her civil rights under Title VII;

B.     Back pay, front pay, and other benefits lost as a result of Perdomo unlawfully being discriminated against;

C.     Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by TKE's unlawful actions;

D.     The attorneys' fees and costs incurred by her; and

E.     Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address gender-based discrimination.

## COUNT II

### PAY DISCRIMINATION – DISPARATE IMPACT
### VIOLATION OF TITLE VII
### 42 U.S.C. §§ 2000e, *et seq.*

82.     Perdomo re-alleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

83.     Defendant TKE, an employer of Perdomo within the meaning of Title VII, has discriminated against Perdomo by treating her differently from, and less preferably than, similarly

situated males, including her male predecessor, by subjecting her to discriminatory pay in violation of Title VII.

84.     Defendant's policies, practices, and procedures, including its pay compensation system(s) and compensation rates, while facially neutral, have produced a disparate impact on Perdomo with respect to her terms and conditions of employment.

85.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Perdomo, entitling Perdomo to punitive damages.

86.     By reason of the continuous nature of Defendant's discriminatory conduct regarding compensation, which persisted throughout Perdomo's employment, Perdomo is entitled to the application of the continuing violations doctrine to all violations alleged herein.

**WHEREFORE**, Perdomo respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.     An Order declaring that TKE violated her civil rights under Title VII;

B.     Back pay, front pay, and other benefits lost as a result of Perdomo unlawfully being discriminated against;

C.     Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by TKE's unlawful actions;

D.     The attorneys' fees and costs incurred by her; and

E.      Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address gender-based discrimination.

<strong>COUNT III</strong>

<strong>RETALIATION<br>VIOLATION OF TITLE VII<br>42 U.S.C. § 2000e-3(a), 42 U.S.C. § 2000e-5(f)(3)</strong>

87.     Perdomo re-alleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

88.     Perdomo engaged in protected activity that included, but is not limited to, complaining to TKE about gender discrimination in compensation.

89.     Perdomo openly opposed gender-based pay inequities at TKE, and on numerous occasions complained to her male superiors, Losey and Bottoms, and also human resources to address and rectify the pay disparity between her and her male predecessor, Richard Gibson

90.     TKE terminated Perdomo's employment in retaliation for her discrimination complaints.

91.     TKE also retaliated against Perdomo by, *inter alia*: undermining her work performance; demonstrating indifference to her contributions; and denying her the ability to participate in management meetings. TKE further retaliated against Perdomo by facilitating and maintaining an environment in which male leadership engaged in acts intended to humiliate and demean her. These adverse employment actions materially and adversely changed Campbell's overall terms and conditions of employment.

92.     TKE's retaliatory acts against Perdomo were a direct and proximate result of her protected activities.

93. A reasonable employee would find TKE's retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

94. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to Perdomo's rights, entitling her to punitive damages.

**WHEREFORE**, Perdomo respectfully requests that the Court enter judgment in her favor and award her the following relief:

A. An Order declaring that TKE violated her civil rights under Title VII;

B. Back pay, front pay, and other benefits lost as a result of her unlawfully being discriminated against;

C. Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by AAA's unlawful actions;

D. The attorneys' fees and costs incurred by her; and

E. Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address gender-based discrimination.

## COUNT IV

### WRONGFUL TERMINATION
### VIOLATION OF TITLE VII

95. Perdomo re-alleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

96.     TKE wrongfully terminated Perdomo's employment because of her gender and in retaliation for her discrimination complaints.

97.     TKE's wrongful termination of Perdomo was a direct, proximate, and pretextual result of gender discrimination and her protected activities.

98.     TKE's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to Perdomo's rights, entitling her to punitive damages.

**WHEREFORE**, Perdomo respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.     An Order declaring that TKE violated her civil rights under Title VII;

B.     All statutory and equitable damages, including lost wages in the form of back pay, front pay, other benefits and compensation, as well as harm in the form of humiliation, embarrassment, emotional and physical distress, and mental anguish, plus interest thereon;

C.     All statutory, legal, and equitable remedies available for Title VII, including an award of punitive damages;

D.     The attorneys' fees and costs incurred by her under 42 U.S.C. § 2000-e-5(k); and

E.     Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address gender-based discrimination.

## COUNT V

**RETALIATION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938,**
**AS AMENDED BY THE EQUAL PAY OF 1963,**
**29 U.S.C. § 215(a)(3); 29 U.S.C. § 216(b)**

99.    Perdomo re-alleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

100.    Perdomo engaged in protected activity under the Equal Pay Act by complaining to TKE about gender discrimination in compensation to address and rectify the pay disparity between her and her male predecessor, Richard Gibson.

101.    Because of these complaints, TKE discriminated against Perdomo by undermining her work performance; demonstrating indifference to her contributions; and denying her the ability to participate in management meetings in violation of 29 U.S.C. § 215(a)(3). TKE further discriminated against Campbell by facilitating and tolerating an environment where she was targeted for harassment and humiliation by TKE leadership.

102.    Furthermore, TKE terminated Perdomo in violation of 29 U.S.C. § 215(a)(3).

103.    TKE's willfully violated the Equal Pay Act by intentionally paying Perdomo less than her predecessor and other similarly-situated men.

**WHEREFORE**, Perdomo respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.    An Order declaring that TKE violated her rights under the Equal Pay Act;

B.    Back pay, liquidated damages, reinstatement, and other relief under 29 U.S.C. § 216(b);

C.    The attorneys' fees and costs incurred by her under 29 U.S.C. §216(b); and

E.    Such other legal, injunctive, and equitable relief as may be just and appropriate, including injunctive relief requiring Defendant to create new policies and procedures to address gender-based pay discrimination.

## COUNT VI

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938
AS AMENDED BY THE EQUAL PAY ACT OF 1963,
29 U.S.C. § 206(d); 29 U.S.C. § 216(b)**

104.     Perdomo re-alleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

105.     Defendant TKE has discriminated against Perdomo within the meaning of the Equal Pay Act of 1963 in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the EPA, by providing her with lower pay than her male predecessor and other similarly situated male colleagues on the basis of her gender even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility as their male counterparts.

106.     Defendant discriminated against Perdomo by subjecting her to discriminatory pay in violation of the Equal Pay Act.

107.     The differential in pay between Perdomo, her male predecessor, and other male managers was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

108.     Defendant caused, attempted to cause, contributed to or caused the continuation of pay discrimination based on gender, in violation of the EPA.

109.     The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).  Because Defendant has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

110.     As a result of Defendant's conduct as alleged in this Complaint, Perdomo has suffered and continue to suffer harm, including but not limited to: lost earnings, lost benefits and

other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

**WHEREFORE**, Perdomo respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.      An Order declaring that TKE violated her rights under the Equal Pay Act; Under 29 U.S.C. § 216(b),

B.      Perdomo is entitled to reinstatement, back pay, liquidated damages, and other statutory and equitable relief;

C.      Attorneys' fees under 29 U.S.C. § 216(b); and

D.      Such other legal, injunctive, and equitable relief as may be just and appropriate, including injunctive relief requiring Defendant to create new policies and procedures to address gender-based pay discrimination.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Perdomo demands a trial by jury in this action.

Dated: July 11, 2021                                    Respectfully submitted,


/s/ *Derek P. Usman*
Derek P. Usman
Florida Bar No. 0120303
Email: derek@usmanfirm.com

**The Usman Law Firm, P.A.**

20701 Bruce B Downs Blvd., Suite 207
Tampa, FL 33647
(813) 377-1197 telephone

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of July, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record appearing on the Certificate of Service generated by the ECF system.

<u>/s/ *Derek P. Usman*</u>
Derek P. Usman