UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IRMA PERDOMO,

     Plaintiff,

v.                         Case No. 8:21-cv-1174-VMC-CPT

TK ELEVATOR CORPORATION
a/k/a THYSSENKRUPP
ELEVATOR CORPORATION
a/k/a THYSSEN ELEVATOR COMPANY,

     Defendant.

_____/

**ORDER**

This matter is before the Court on consideration of Defendant TK Elevator Corporation's Motion to Dismiss, in part, the Amended Complaint (Doc. # 17), filed on July 26, 2021. Plaintiff Irma Perdomo filed a response in opposition on August 15, 2021. (Doc. # 22). The Motion is granted in part and denied in part as set forth below.

I.   **Background**

    A.   **The Amended Complaint**

In her Amended Complaint, Perdomo brings multiple claims stemming from alleged gender discrimination that she suffered while an employee of TK Elevator Corporation ("TKE"). (Doc. # 15). As pertinent to this Motion, Count II of the Amended

1

Complaint contains a claim for disparate impact under Title VII of the Civil Rights Act of 1964. (Id. at 13-15). In that claim, Perdomo alleges that TKE treated her less favorably than similarly situated male employees, including her male predecessor, by subjecting her to discriminatory pay. (Id. at ¶ 83). She claims that while TKE's "policies, practices, and procedures, including its pay compensation system(s) and compensation rates" are facially neutral, they have produced a disparate impact on Perdomo. (Id. at ¶ 84).

The Amended Complaint also brings claims for (1) disparate treatment under Title VII; (2) retaliation in violation of Title VII; (3) wrongful termination under Title VII; (4) retaliation under the Equal Pay Act; and (5) violation of the Equal Pay Act. TKE does not seek dismissal of these other claims. (Doc. # 17 at 1 n.1).

Rather, TKE seeks dismissal of Count II with prejudice for failure to exhaust administrative remedies and failure to state a claim under Rule 12(b)(6). (Doc. # 17 at 4-10). Perdomo has responded (Doc. # 22), and the Motion is ripe for review.

B.   **The Administrative Charge**

Perdomo attached her administrative charge of discrimination to her Amended Complaint.[1] (Doc. # 15-1). The opening form states in relevant part:

> I was hired in January 2014 as a Payroll Specialist. In July 2016, I was promoted to Regional Project Manager and in Sept. 2017, I accepted a promotion to National Program Manager, with the condition of a salary increase. However, the increase was never given. As National Program Manager, my duties increased from 40 branches to 120 branches but my salary did not increase. The previous National Program Manager, a male, earned a salary of over $100,000. My salary remained at $47,000. Around December 2018 and January 2019, I complained to Human Resources about my salary and was told I was on a list for a salary adjustment because my salary did not meet my job duties. On January 23, 2019, I received a telephone call from the V.P. of Services, Mr. Terry Story, and with HR present, told me I was laid off because my position was eliminated. No further information was provided.
>
> I believe that I have been discriminated against due to my sex, Female, and subjected to retaliation for complaining about my salary, in violation of [Title VII] and in violation of the Equal Pay Act. Additionally, I am aware of other females being subjected to a lower salary than males who perform the same or similar job duties.

(Doc. # 15-1 at 2).

---

[1] "The Court can consider the EEOC charge when reviewing the motion to dismiss because the charge is central to Plaintiff's claims and is undisputed. Courts regularly consider EEOC charges when ruling on motions to dismiss[.]" Nixon v. United Parcel Serv., Inc., No. 7:13-cv-38 HL, 2013 WL 6815719, at *2 (M.D. Ga. Dec. 24, 2013).

In her September 29, 2019 letter to the Equal Employment Opportunity Commission ("EEOC") in support of her charge, Perdomo described her employment history and "[stood] by [her] initial statements and complaint charges" against TKE. (Id. at 12-22). In a section of the letter titled "Analysis," Perdomo argued that she had stated all of the elements for (1) a claim of gender discrimination, (2) a claim under the Equal Pay Act, and (3) a retaliation claim. (Id. at 20-21).

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

### III. **Analysis**

Before filing a suit under Title VII, a plaintiff must exhaust her available administrative remedies by filing a charge with the EEOC. <u>Anderson v. Embarq/ Sprint</u>, 379 F. App'x 924, 926 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)). "The purpose of this exhaustion requirement is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." <u>Gregory v. Ga. Dep't of Hum. Res.</u>, 355 F.3d 1277, 1279 (11th Cir. 2004) (internal quotation marks and alteration omitted).

"The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and

investigation." Anderson, 379 F. App'x at 926. A plaintiff's complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id.; see also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970) (noting that the allegations in a complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge).

Therefore, claims — even new claims — "are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint." Anderson, 379 F. App'x at 926 (internal quotations omitted). Conversely, "allegations of new acts of discrimination are inappropriate." Gregory, 355 at 1279–80. Nonetheless, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." Sanchez, 431 F.2d at 460–61. Thus, "the scope of an EEOC complaint should not be strictly interpreted." Id. at 465. Accordingly, when considering TKE's administrative exhaustion argument, the "proper inquiry . . . is whether [Perdomo's] complaint was like or related to, or grew out of, the allegations in [her] EEOC charge." Gregory, 355 F.3d at 1280.

Title VII creates a federal cause of action for two separate theories of discrimination: disparate treatment and disparate impact. See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (describing how discrimination under the statute are "organize[d]" into these two categories). A claim of disparate treatment involves an allegation that the employer discriminated against an employee on the basis of a protected category. Id. "Disparate impact, in contrast, involves 'facially neutral employment practices that have significant adverse effects on protected **groups** . . . without proof that the employer adopted those practices with a discriminatory intent. . . . The evidence in these "disparate impact" cases usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities.'" Id. at 807–08 (emphasis in original).

There is scant Eleventh Circuit case law regarding what facts in an administrative charge might be reasonably expected to trigger an EEOC disparate impact investigation. In Price v. M & H Valve Co., the court determined without extensive discussion that the plaintiff-employee failed to exhaust his administrative remedies with respect to his disparate impact claim where his EEOC charge alleged that the

employer: "1) denied him the opportunity to apply for a supervisory position because of his race by failing to advertise vacant supervisory positions and by promoting Caucasian employees, instead of more qualified African-American employees; and (2) subjected him and other African-American employees to harassment through racial slurs, jokes, and differences in treatment." 177 F. App'x 1, 14 (11th Cir. 2006). However, district courts within this Circuit have looked to a Fifth Circuit case for guidance in making this determination.

In that case, the Fifth Circuit upheld the dismissal of a plaintiff's disparate-impact claim for failure to exhaust administrative remedies where "a disparate-impact investigation could not reasonably have been expected to grow out of [plaintiff's] administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only." Pacheco v. Mineta, 448 F.3d 783, 792 (5th Cir. 2006). The Fifth Circuit was particularly concerned that the plaintiff's administrative charge had not identified any neutral employment policy, which is the "cornerstone of any EEO disparate-impact investigation, since the EEO must

evaluate both the policy's effects on protected classes and any business justifications for the policy." Id.

Other circuits have reached similar conclusions where the EEOC charge alleged only disparate treatment. See Abdus-Shahid v. Mayor & City Council of Baltimore, 674 F. App'x 267, 276 (4th Cir. 2017) (affirming dismissal of an employee's claims because his EEOC charge alleged facts consistent with a disparate treatment claim, while his complaint asserted a disparate impact claim); Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 71 (2d Cir. 2015) (affirming dismissal of disparate impact claim for failure to exhaust where the EEOC charge "complain[ed] of individualized disparate treatment" only).

The Court finds these authorities to be persuasive. Here, Perdomo's letter to the EEOC in support of her charge is focused entirely on acts done by and allegedly perpetrated against **her**. The arguments and allegations in the letter are focused specifically on the events pertaining to Perdomo's own experience at TKE – it is devoid of any information concerning a neutral TKE policy, any allegations about TKE pay provisions, nor does it mention a disparate discriminatory impact such unmentioned policies have on women as a whole at TKE. For example, in the opening paragraphs of

her letter, Perdomo wrote: "**My** pay was significantly less for the same work performed by a male colleague[.] . . . The company in comparison to male colleagues paid **me** a significantly less salary and **I** was treated unfairly. . . . Throughout **my** employment with the company, **I** was constantly discriminated against for my gender. . . . Most, if not all Project Managers with similar duties were paid a much higher salary than **I** was." (Doc. # 15-1 at 12) (emphases added).

Similarly, in her initial charge of discrimination, Perdomo focuses on events pertaining to the alleged discrimination against her personally, with the exception of one sentence that will be discussed below.

As in <u>Pacheco</u>, Perdomo's charge here facially alleged a disparate treatment claim, complained only of past incidents of disparate treatment, and failed to identify any neutral employment policy. Even under the liberal EEOC exhaustion standard, this is insufficient to administratively exhaust a disparate impact claim. <u>See</u> <u>Pacheco</u>, 448 F.3d at 792; <u>see also</u> <u>Bryant v. Norfolk S. R.R.</u>, No. 5:20-cv-225-TES, 2020 WL 7634588, at *5 (M.D. Ga. Dec. 22, 2020) (finding that the plaintiff made no mention of any company policy in his EEOC charge and that the EEOC investigation into the sexual harassment reported by plaintiff would not uncover any

unmentioned policies, much less disparities in their enforcement); Mensah v. Baxalta US Inc., No. 1:18-cv-05013-CAPLTW, 2020 WL 1452988, at *3 (N.D. Ga. Feb. 19, 2020) ("Because the EEOC charge alleges only intentional discrimination, and makes no mention of a facially non-discriminatory employment practice that disproportionately impacts African Americans, the plaintiff is barred from asserting a disparate impact claim now.").

In her response, Perdomo points to the following information in her EEOC charge to demonstrate exhaustion of a disparate-impact claim:

(1) The charge explicitly states that, "Additionally, I am aware of other females being subjected to a lower salary than males who perform the same or similar job duties." (Doc. # 15-1 at 2).

(2) In its response to the EEOC charge, and in the context of her claim under the Equal Pay Act, TKE identified various factors that go into determining salaries. (Id. at 9) ("[TKE] pays its employees based upon a combination of factors, including education, experience, performance, geographical location, and other gender-neutral factors.").

(3)   In her letter response to the EEOC investigation, Perdomo wrote that: "Most if not all project managers with similar duties were paid a much higher salary than I was. The male counterpart that performed the same duties as me, Richard Gibson, earned a much higher salary." (Id. at 12).

(4)   In her letter response to the EEOC investigation, Perdomo wrote that: "Other females in the company, that are currently employed by TKE, have expressed that they are still discriminated against." (Id. at 13).

As to the scattered and vague references in the letters from TKE and Perdomo to the EEOC, "[a] vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace." Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997); see also McClain v. Lufkin Indus., Inc., 519 F.3d 264, 274 (5th Cir. 2008) (rejecting plaintiff's allusion to a "cultural problem" in the business as a vague term that could not be understood as a neutral employment policy).

Additionally, the Court finds that the sentence in Perdomo's original charge that: "Additionally, I am aware of other females being subjected to a lower salary than males

who perform the same or similar job duties" is insufficient to demonstrate administrative exhaustion of a disparate impact claim. This still does not point to, or even hint at, a facially neutral policy or practice that had a disparate impact on female TKE employees. See Abdus-Shahid, 674 F. App'x at 275 (finding that plaintiff "did not assert any facts that would allow a conclusion that Muslims were being disproportionately impacted by the City's actions. While he claims another employee experienced the 'same issue,' that allegation is vague and does not suggest anything more than discrete discriminatory acts"); see also Woodman v. WWOR-TV, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) (holding plaintiff's EEOC charge could not be reasonably expected to lead to a disparate impact investigation, even though plaintiff alleged that other colleagues were affected by age discrimination, where she had failed to identify a "specific, facially neutral employment practice" and the charge complained only of intentional discrimination). Compare Soliday v. 7-Eleven, Inc., No. 2:09-cv-807-JES-SPC, 2010 WL 3768370, at *2 (M.D. Fla. Sept. 22, 2010) (finding that plaintiff exhausted disparate impact claim where the charge identified a company policy of discontinuing the use of text pagers and fax machines for all franchisees and stated that the plaintiff

13

was a disabled individual who relied upon those devices to communicate, thus plaintiff had identified a facially neutral policy and a disproportionate impact on disabled individuals). It is unreasonable to believe that an EEOC investigation into a disparate impact claim could be expected to grow out of this lone, vague sentence, especially when viewed against Perdomo's later submission to the EEOC that focused entirely on events related to her disparate treatment claim. As the Fourth Circuit has aptly described, "the problem is that the words used in the EEOC charge do not correlate to the sort of assertions and facts from which a future cause of action based on disparate impact can be discerned." Abdus-Shahid, 674 F. App'x at 276.

For these reasons, Perdomo has not administratively exhausted her Title VII disparate impact claim, and it should be dismissed. However, the Court disagrees with TKE that the dismissal should be with prejudice. "When a complaint under Title VII is time-barred for failure to exhaust administrative remedies, it must be dismissed for lack of subject-matter jurisdiction." Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999); Fed. R. Civ. P. 12(h)(3). A dismissal for lack of subject-matter jurisdiction is without prejudice. Swauger v. Dep't of Def. - Def. Intel. Agency, 852

F. App'x 393, 396 (11th Cir. 2021) (citing <u>Stalley ex rel.
U.S. v. Orlando Reg'l Healthcare Sys., Inc.</u>, 524 F.3d 1229,
1232 (11th Cir. 2008)). Because the Court is dismissing Count
II on the basis of failure to exhaust, it will not discuss
TKE's alternative arguments under Rule 12(b)(6).

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED:**

(1)   Defendant TK Elevator Corporation's Motion to Dismiss,
      in part, the Amended Complaint (Doc. # 17) is **GRANTED in
      part and DENIED in part.** Count II of the Amended
      Complaint is **DISMISSED WITHOUT PREJUDICE.**

(2)   Defendant's answer to the remainder of the Amended
      Complaint is due 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>8th</u>
day of October, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

15