UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO. 8:21-CV-01174-VMC-CPT

IRMA PERDOMO,

                Plaintiff,

- against -

TK ELEVATOR CORPORATION,

                Defendant.

                /

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT[1]**

It is uncontested that (i) plaintiff did not perform the same work or have anywhere near the same qualifications as Gibson (her only alleged comparator[2]) and (ii) her position was eliminated as part of a nationwide reduction in force. Plaintiff offers no evidence that these legitimate reasons are both false and pretextual. Instead, she relies on her own subjective belief that she deserved the same salary as this better credentialed-longtime employee who performed more complicated work and that she should not have been in any layoff. Low caliber personal beliefs are not enough to create a prima facie case, much less overcome the legitimate reasons for paying plaintiff in line with her education, experience, skills, job duties, and geographic location; and then including her in the reduction in force due the dwindling need for her services. The pertinent facts are not in dispute. Accordingly, there is no genuine issue of material fact warranting defeat of TKE's motion for summary judgment.

---

[1] "Def. Br." and "Def. Ex." refers to TKE's motion and exhibits, ECF No. 31 (Mar. 25, 2022) and "Pl. Br." and "Pl. Ex." refers to plaintiff's opposition and exhibits, ECF No. 39 (Apr. 19, 2022).

[2] Plaintiff has abandoned her claim that she was treated less well than other male project managers. *Compare* Def. Br. at §§ I(B)-(C), & II *with* Pl. Br. *generally*.

## **THERE ARE NO MATERIAL ISSUES OF FACT**

Rather than address the undisputed material facts with record evidence (which includes almost 250 pages of plaintiff's testimony), she offers a declaration with freshly recollected "facts" contradicting her deposition. Pl. Ex. 3. For example, she now recalls facts about her job and asking Mr. Losey if she was paid less due to her gender.[3] Plaintiff offers no reason for her sudden recollection or explanation for why it conflicts with her earlier testimony. Plaintiff had ample time to correct errors in her testimony but chose not to. Def. Ex. 1 at 238:4-239:8. This Circuit has consistently held that declarations—like this one—are improper and should not be considered.[4]

TKE's motion is based on plaintiff's testimony, authenticated documents, and uncontradicted declarations, which plaintiff refuses to respond directly to. Instead, she tries to create the appearance of a dispute where none exists by, for example, disputing her own testimony (Pl. Br. at ¶¶ 7, 12, 16-17, 29-30, 32) and disputing facts just to wordsmith them (*id*. at ¶¶ 2, 14, 17, 22, 26-30). The word "dispute" is used as code for her desire to add information to nearly every fact listed by TKE, often in the form of self-serving statements that lack a foundation, e.g., ¶¶ 8, 10, 14, 17-18, 22-23, 31, 33. It is improper to claim that the facts are disputed when they are not. She could have

---

[3] *Compare* Pl. Ex. 2 at ¶¶ 5-6, 9-11 *with* Def. Ex. 1 at 83:12-20 (identifying her job duties while serving as national project manager and confirming nothing else would help her identify other duties); *compare* Pl. Ex. 2 at ¶ 12 *with* Def. Ex. 1 at 101:25-103:17, 145:19-147:2 (never mentioning gender being discussed with Losey, and confirming no other facts/events existed to support her claims).

[4] *See, e.g., Santhuff v. Seitz*, 385 F. App'x 939, 944 (11th Cir. 2010) ("when a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony").

filed her own statement of facts but chose not to. Order, ECF No. 14 at 3.

Plaintiff quibbles about other facts but does not provide proper evidence to show they are "disputed." She ignores the declarations submitted by TKE, misreads documents, and disputes facts without citation. Pl. Br. at ¶¶ 2-5, 15, 19, 20-21, 24-29. Or worse, she makes legal arguments, e.g., ¶¶ 5, 9, 12, 14, 17, 21-22, 27-28, 31, 33. She also relies on rank hearsay and inadmissible material that should not be considered, e.g., Exhibit 25 is a chart with incorrect info made by plaintiff. *See* Fed. R. Civ. P. 56(c)(1)(A). Regardless, these types of trifling disputes do not create material issues of fact since they do not change the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

## ARGUMENT

As a threshold issue, plaintiff clarifies that Ms. Antonneau, Ms. Prell, and Mr. Bottom are, together, responsible for her discrimination and retaliation claims, since they were members of a so-called "brain trust" that "held final decision-making power" over her. Pl. Br. at ¶ 33. But at her deposition she testified that Antonneau and Prell treated her fairly and *never* discriminated or retaliated against her. Def. Ex. 1 at 32:9-24, 34:12-35:5. As for Bottom, plaintiff has cited no evidence that he considered her gender or engagement in a protected activity when making any decision about her. In fact, there is no evidence he knew she complained at all. *Id.* at 145:19-22. Plaintiff's new "evidence" contradicting her testimony about Antonneau, Prell, and Bottom eviscerates her claims.

## I. The gender discrimination claims are deficient as a matter of law.

Plaintiff does not provide any evidence to show that there was an inference of discrimination connecting her termination to her gender. *See* Def. Br. at I(C).

Plaintiff also has not shown that she was paid less due to her gender. Critically, she does not explain what makes Gibson a proper comparator and utterly ignores the substantial differences between their experience and responsibilities. It is uncontested that Gibson had far more experience, helped start the MAX Project, and managed a $20 million budget while overseeing the international production of 80,000 MAX devices, among his many other duties. *See* Def. Br. at §§ I(B) & II.[5] In response, plaintiff does not explain how her role mirrored this in form or substance and instead suggests that a title she gave herself in her email signature block is evidence that the two jobs required the same dexterity, energy, and accountability. Her subjective belief of her qualifications and uncorroborated self-serving statements do not create issues of fact.

## II. The retaliation claims are deficient as a matter of law.

Plaintiff does not connect an adverse act to a protected activity. TKE indisputably maintained its course of action when it announced in June 2017 that it would be eliminating plaintiff's position in about a year and then following through on that plan. Also, there is no evidence that the alleged brain trust knew that plaintiff opposed discrimination when deciding her pay or including her in the staff reduction.

Plaintiff wrongly claims that the August 2018 writeup was an adverse act. It did

---

[5] Plaintiff concedes a fundamental difference between her and Gibson: she worked on "internal" matters, while he also handed "external" matters. Pl. Br. at ¶ 17.

4

not impact her pay (she received a raise soon after) or dissuade her from future protected activities. Def. Ex. 1 at 98:18-21, 101:6-102:7. Also, it was based on a report from Ms. Scott, who plaintiff admits did not retaliate against her. Def. Br. at 12 n. 6. The writeup occurred for legitimate reasons. *Id.* (citing cases); Pl. Ex. 35-36; Pl. Ex. 1 at 142:14-145:25. Her disagreement with it is not evidence of falsity or pretext.

Plaintiff also says that she was moved to a cubicle and not invited to a meeting in December 2018 but fails to explain how either is an adverse act. *See* Pl. Br. at 19. No reasonable juror could find based on the record evidence that these events were retaliatory. Plaintiff, herself, admitted she does not know why she was moved and Davis explained that "all of our desks" were moved due to a "restructure of some kind." Def. Ex. 1 at 227:9-229:5; Pl. Ex. 1 at 71:7-13. As for the meeting, Losey let her attend after she asked to go, though it would not be odd to deny such a request when an employee is being terminated around the same time. *See* Def. Ex. 1 at 137:14-23.

### III.   No evidence that the reasons for her pay rate were false *and* pretextual

Plaintiff candidly admits that TKE "identified nondiscriminatory reasons for the pay disparity" between her and Gibson (Pl. Br. at 21) and she offers no evidence to contradict the undisputed fact that gender played *no* part in deciding her pay. Indeed, plaintiff admits that TKE paid her within the pre-set "compensation range [for the position] . . . after she had been promoted." Pl. Br. at 21. While she says her pay was at the low end of the band, this ignores the fact that TKE also "caps promotion-based pay rate increases" when an employee changes titles. Def. Ex. 4 at ¶ 8.

Faced with this stark truth, plaintiff contends that she performed the same work

5

that Gibson performed at the time of his resignation and thus the failure to pay her the same salary must be false and pretextual. This circular argument ignores the many reasons why Gibson earned more. For example, Gibson spent considerable time and energy launching a major project for TKE. In so doing, he oversaw numerous tasks to make the project a success. *See* Def. Ex. 1 at 54:10-13 (admitting she did not know his duties). Newton's First Law of Motion is applicable here, i.e., an object at rest stays at rest and an object in motion stays in motion unless acted upon by an unbalanced force. Said differently, it took far more effort for Gibson to get the MAX Project going than it took plaintiff to keep it moving.

Plaintiff argues that she was put in an "inappropriate job classification." Pl. Br. at 14. There is no such claim in the charge of discrimination or complaint, and it was never mentioned at her deposition. *See* ECF Nos. 1, 1-1, 15; Def. Ex. 1. The decision to change her role occurred after plaintiff became irritated that she needed pre-approval to work overtime, so she "requested several times to be set up as a salaried employee so the overtime restriction can be override," i.e., this change allowed her to work the hours she wanted without needing pre-approval from a supervisor. Pl. Ex. 33 at 2. No evidence exists that this change occurred for discriminatory or retaliatory reasons.

Plaintiff claims that TKE did not follow its compensation policies based on testimony from a fact witness with no admissible information about the relevant policies. Davis did not work on compensation decisions when plaintiff worked for TKE and she was unfamiliar with the policies in effect before 2021. *See* Pl. Ex. 1 at 33:20-24, 38:25-40:2, 113:4-7. Regardless, nothing in Davis' testimony is inconsistent

6

with the material facts. *See* Pl. Ex. at 1 at 139:15-142:9.

## IV. No evidence that reasons for her separation were false *and* pretextual.

TKE offered unrefuted evidence of its legitimate reasons for the termination. Def. Br. at §§ I(E), II. Plaintiff replies that she should not have been part of the layoffs because she was not an underperforming employee, TKE could have saved more by firing Brown, and the MAX Project did not end with her. *See* Pl. Br. at 15-17. It is irrelevant what plaintiff thinks about her performance or who she would have chosen to fire: the "inquiry into pretext centers on the employer's beliefs, not the employee's." *See Menefee v. Sanders Lead Co.*, 786 F. App'x 963, 966 (11th Cir. 2019).[6] As for the MAX Project, she misses the point. *See* Pl. Br. at 15-17. Her role on the installation phase ended, while the project continued into the next phase. It is controverted that:

> With the installation phase of the project beginning to winddown, it was appropriate for TKE to focus on the next phase of the project, which would allow it to use the data it was receiving from the MAX devices to troubleshoot elevator problems. [Plaintiff] was not involved in this more technical aspect of the MAX Project and, thus, her services were no longer required for the MAX Project.

Def. Ex. 3 at ¶ 8.

## V. Plaintiff has no wage-based damages

It is uncontested that plaintiff did not search for other employment after her separation and now earns more than she did when employed by TKE, which warrants dismissal of her termination claims. *Compare* Def. Br. at § III *with* Pl. Br. at ¶ 32.

---

[6] Eliminating plaintiff's role saved money. *Vira v. Crowley Liner Servs.*, 723 F. App'x 888, 895 (11th Cir. 2018) (decision may be based on finances where an employee was hired before the layoff decision, and the layoff resulted in paying 1 salary instead of 2). Plaintiff does not allege she was qualified for Brown's job. Plaintiff undercuts her claims by arguing that Brown was kept for a nondiscriminatory and nonretaliatory reason, i.e., she had a strong working relationship with Story. Pl. Br. at 17.

7

## CONCLUSION

In sum, TKE has offered ample evidence that it acted in a genderblind manner and there is no evidence it engaged in discrimination or retaliation.

Date: April 29, 2022.　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　By: /s/ *Garrett S. Kamen*
　　　　　　　　　　　　　　　　　　　　Garrett S. Kamen (Fla. Bar No. 125854)
　　　　　　　　　　　　　　　　　　　　Cathy M. Stutin (Fla. Bar No. 865011)
　　　　　　　　　　　　　　　　　　　　FISHER & PHILLIPS LLP
　　　　　　　　　　　　　　　　　　　　450 East Las Olas Boulevard, Suite 800
　　　　　　　　　　　　　　　　　　　　Fort Lauderdale, Florida 33301
　　　　　　　　　　　　　　　　　　　　Phone: (954) 525-4800
　　　　　　　　　　　　　　　　　　　　Facsimile: (954) 525-8739
　　　　　　　　　　　　　　　　　　　　gkamen@fisherphillips.com
　　　　　　　　　　　　　　　　　　　　cstutin@fisherphillips.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system on April 29, 2022 and that a true and correct copy of the foregoing document has been provided to all counsel of record or unrepresented parties on the service list below by the method indicated.

/s/ <i>Garrett S. Kamen</i><br>
GARRETT S. KAMEN

## Service List

Derek P. Usman
THE USMAN LAW FIRM, P.A.
20701 Bruce B. Downs Boulevard, Suite 207
Tampa, Florida 33647
Telephone: (813) 377-1197
Facsimile: (312) 528-7684
derek@usmanfirm.com

*Attorneys for Plaintiff*

(*By CM/ECF*)